THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HYDROJET SERVICES, INC. | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 20-4727-SWR |
| v. | : | |
| | : | |
| SENTRY INSURANCE COMPANY, f/k/a SENTRY INSURANCE A MUTUAL COMPANY | : : : | |
| | : | |
| Defendant. | : | |

## OPINION

This case involves a single claim of bad faith arising out of a dispute regarding whether Defendant, Sentry Insurance f/k/a Sentry Insurance a Mutual Company ("Sentry"), mishandled and unreasonably delayed its investigation and adjustment of Plaintiff, Hydrojet Services, Inc.'s ("Hydrojet"), claim following a lightning strike outside Hydrojet's manufacturing facility in Reading, Pennsylvania in June 2018. Presently before this Court is the Sentry's Motion to Compel Discovery (doc. 35) and Hydrojet's Response in Opposition (doc. 37).[1] Sentry believes it is entitled to certain documents and information that Hydrojet has withheld and Hydrojet opposes Sentry's Motion on the basis that the information Sentry seeks either has already been produced, is not relevant, and/or is privileged. The parties appeared before me for oral argument on May 26, 2022. For the reasons that follow, Sentry's Motion is granted in part and denied in part.

I.  **FACTUAL BACKGROUND**

Hydrojet manufactures parts for the aerospace industry. On June 28, 2018, lightning struck a pole outside Hydrojet's manufacturing facility in Reading, Pennsylvania, causing

---

[1] Hydrojet concurrently filed its own Motion to Compel Discovery from Sentry (doc. 34) which I address in a separate Opinion.

damage to several pieces of Hydrojet's equipment. Hydrojet stopped all production for several hours following the strike so its staff could assess the damage. Shortly thereafter, Hydrojet submitted a claim to Sentry, its insurance carrier, under the relevant policy for Business Personal Property ("BPP") loss and Business Income ("BI") loss. Within a few weeks, Hydrojet repaired eight pieces of equipment at a cost of approximately $47,000, which Sentry paid.

In July 2018, approximately one month after the loss, Hydrojet realized its Flow 5 Axis Router[2] ("Router") was also damaged during the lightning strike. It advised Sentry about the damage to the Router and estimated damages "in the range of" $150,000. The Router remained unrepaired for several months. The reasons for the delayed repairs are central to this dispute.

In Spring 2019, Hydrojet demanded appraisal of its BI claim. On December 4, 2019, Umpire, Colleen Vallen, C.P.A., issued an appraisal award of approximately $2.4 million. Sentry paid the remaining amount due on the BI claim as determined by the Umpire (approximately $1.68 million – the difference between the advance payments it had already made and the umpire award).

On June 25, 2020, Hydrojet initiated the instant action in Pennsylvania state court, alleging that Sentry acted in bad faith by unreasonably delaying and mishandling its investigation of the claim. Sentry subsequently removed the matter to this Court. (doc.1). During discovery, Sentry requested various categories of documents relating to Hydrojet's claim. Hydrojet provided certain documents to Sentry, but withheld others based on relevance and privilege. Hydrojet's withheld documents are identified in a privilege log it provided to Sentry. Sentry also propounded interrogatories to Hydrojet, and at the time of this Opinion, some have

---

[2] The Router is a machine used for precision cutting and shaping of parts for the aerospace industry. (doc.34 at p.1).

not been answered. Now, Sentry seeks to compel the production of certain Hydrojet documents as well as responses to certain interrogatories.[3]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides for the discovery of relevant, non-privileged information. *See* Fed. R. Civ. P. 26(b)(1).3. Under this rule, "discovery is not limited to information which is admissible at trial but instead is allowed 'if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir.1982) (*quoting* Fed.R.Civ.P. 26(b)(1)). When a party resists discovery by asserting a privilege, that party bears "the burden of proving [the privilege's] existence and applicability." *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). In this regard, the party must specifically show how the asserted privilege applies. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (1982) (The party "'must show specifically' how [the information requested] is not relevant or how [it] is overly broad, burdensome or oppressive" and a "mere statement that [the information sought] is 'overly broad, burdensome, oppressive, and irrelevant' is not adequate to voice a successful objection.").

## III. DISCUSSION

### a. Relevance

As an initial matter, I must first determine whether the documents, communications, and information sought by Sentry are relevant to its defense against Hydrojet's bad faith claim. *See*

---

[3] In its Motion, Sentry requests: (1) a revised privilege log; (2) complete responses for its Requests for Production of Documents 22, 24, 26-31, 34-35, and 38; (3) complete answers to its Interrogatories 10-13, 14-16, and 18; (4) documents and communications between Sentry and third parties which were withheld on the basis of work product privilege; (5) documents and communications between Sentry and third parties which were withheld on the basis of attorney-client privilege; and (6) responses to subpoenas directed to Franklin Horowitz, Martin Rabinowitz, and Jay Levin, Esq.

Fed. R. Civ. P. 26(b)(1) (parties may obtain discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.... Information within this scope of discovery need not be admissible in evidence to be discoverable."). Under the Federal Rules, relevancy is to be construed broadly, and material is relevant if it bears on, or reasonably could bear on, an issue that is or maybe involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).

Here, Sentry seeks from Hydrojet: (1) a revised privilege log; (2) complete responses for its Requests for Production of Documents 22, 24, 26-31, 34-35, and 38; (3) complete answers to its Interrogatories 10-13, 14-16, and 18; (4) documents and communications between Sentry and third parties which were withheld on the basis of work product privilege; (5) documents and communications between Sentry and third parties which were withheld on the basis of attorney-client privilege; and (6) responses to subpoenas directed to Franklin Horowitz, Martin Rabinowitz, and Jay Levin, Esq. I find all these topics relevant to Sentry's defense. At oral argument, however, the parties agreed that they would stipulate to deadlines regarding revisions, responses, and answers to the aforementioned privilege log, requests for production of documents, and interrogatories.[4] Therefore, those issues are now moot. Accordingly, the remainder of this Opinion will only address topics 4 through 6, above.

    **b. Work Product Doctrine**

Sentry requests certain documents identified in Hydrojet's privilege log that have been withheld based on the work product doctrine. Those documents primarily concern communications between Hydrojet and third parties, such as Franklin Horowitz and Martin Rabinowitz. Sentry argues that the documents it requests are not protected by the work product

---

[4] *See* Transcript 5/26/22 at pp.59-61, 61-65, and 83-85.

4

doctrine because they were created in the ordinary course of business and/or for nonlitigation purposes. Hydrojet counters that many of the documents Sentry requests are protected as work product because they were prepared in anticipation litigation starting November 12, 2018, when Sentry advised Hydrojet that it was retaining a law firm to handle its claim.

The work product doctrine is governed by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3). *See also United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Work product is defined as "tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The work product doctrine protects documents prepared in anticipation of litigation, rather than "in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *U.S. v. Rockwell Intern*, 897 F.2d 1255, 1264 (3d Cir. 1990) (*quoting U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). A document is prepared in anticipation of litigation when "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Id.* (*quoting In re Grand Jury Proceedings*, 604 F.2d 798, 803 (3d Cir.1979)). Conversely, documents prepared solely for the investigation or adjustment of an insurance claim would not be protected even if those documents were to be useful in subsequent litigation. *See Beachfront North Condo Ass'n v. Lexington Ins. Co.*, 2015 U.S. Dist. LEXIS 102917 at *12 (D.N.J. 2015).The party claiming the work product doctrine has the burden of establishing that it applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

In evaluating whether Hydrojet properly invoked the work product doctrine, the Court must first determine when Hydrojet reasonably anticipated litigation regarding its claim. A

party's anticipation of litigation is objectively reasonable if "there existed an identifiable specific claim or impending litigation when the materials were prepared." *See Borgia v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4375643, *3 (E.D. Pa. 2014) (*citing Montgomery Cnty. v. Microvote Corp.*, 175 F.3d 296, 305 (3d Cir. 1999) (Greenburg, J., concurring)).

Here, Hydrojet's public adjuster, Franklin Horowitz, sent Sentry an estimated proof of loss on November 9, 2018. (doc. 38, Ex. D). Horowitz's email to Sentry stated that the preliminary BPP claim was valued at $617,671.57, the cost to repair the Router was approximately $520,000, and Hydrojet had lost nearly $250,000 per month in lost sales for the BI claim. *Id.* Horowitz concluded the email by stating, "It is in the best interest of Hydrojet and Sentry Insurance, to resolve the claim and Hydrojet resume servicing its customers." *Id.* Three days later, on November 12, 2018, Sentry informed Hydrojet that it had hired outside counsel and that Hydrojet should communicate with Sentry's counsel going forward. (doc. 38, Ex. A. at p.3).

Given Hydrojet's demand to Sentry to resolve its claim, and Sentry's response of retaining outside legal counsel, I find it reasonable that both parties anticipated litigation on November 12, 2018. At this point, the evidence shows that both parties subjectively believed that resolution of Hydrojet's claim may require litigation. *See Borgia*, 2014 WL 4375643, at *3 (determining when a party reasonably anticipated litigation requires a subjective analysis, which in part, must focus on the party's state of mind). For example, when Sentry sent Hydrojet a reservation of rights letter within a week of receiving Horowitz's proof of loss, Hydrojet responded by disputing the need for Sentry to reserve any rights regarding Hydrojet's claim. (doc. 38, Ex. N). In its response, Hydrojet also sent Sentry a copy of Pennsylvania's Unfair

6

Insurance Practices statute for its review. *Id.* Such actions evidence the parties' belief that litigation may be necessary to resolve Hydrojet's claim.

Because I conclude that Hydrojet reasonably anticipated litigation regarding its claim on November 12, 2018, materials prepared on or after this date can "fairly be said to have been prepared or obtained because of the prospect of litigation." *In re Grand Jury Proceedings*, 604 F.2d at 803. Having not reviewed the documents, however, I will order *in camera* review of Hydrojet's documents created on or after November 12, 2018, which Hydrojet has withheld solely on the basis of the work product privilege to determine whether in fact the privilege applies.[5]

### c. Attorney-Client Privilege[6]

Sentry also seeks the production of documents and communications between Hydrojet, its counsel, and claims consultants and other third parties. Specifically, it seeks communications between Hydrojet (and/or its counsel) and the following individuals or entities: (1) Franklin Horowitz, a public adjuster; (2) Martin Rabinowitz, accountant; and (3) Fulton Bank, Mark Saberton, and Steve Colston.[7] Hydrojet has withheld such communications on the basis of attorney-client privilege, arguing those communications were necessary to facilitate the rendering of legal advice. Sentry argues that the privilege does not apply because it believes such

---

[5] In a footnote in its Motion, Sentry argues that even if the work product doctrine applies, the documents and communications it seeks are nevertheless discoverable because "Sentry has a substantial need for the materials to prepare its defenses to Hydrojet's claims in this case, and Sentry cannot, without undue hardship, obtain their substantial equivalent by other means." (doc. 35 at p.11) (*citing* Fed. R. Civ. P. 26(b)(3)). I will reserve any determination of whether Sentry has a substantial need for these documents after my *in camera* review.

[6] Because the arguments and analysis are identical, this Section shall also apply to Section III(C) of Sentry's Motion to Compel regarding "Hydrojet's Improper Withholding of Documents in Response to Sentry's Subpoenas to Horowitz and Rabinowitz".

[7] Hydrojet states they "are prepared to produce many of [the] documents" Sentry identifies in its Motion regarding Fulton Bank, Mark Saberton, and Steve Colston. (doc. 37 at p.7).

communications were not necessary to assist in providing legal advice. Moreover, Sentry argues that Hydrojet's privilege log lacks sufficient descriptions to demonstrate that its withheld documents are indeed protected by the attorney-client privilege.

Under Pennsylvania law[8], the attorney-client privilege protects "confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011). To successfully invoke the protections of attorney-client privilege, a litigant must show: "(1) [t]he asserted holder of the privilege is or sought to become a client[;] (2) [t]he person to whom the communication was made is a member of the bar of a court, or his subordinate[;] (3) [t]he communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purposes of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort[; and] (4) [t]he privilege has been claimed and is not waived by the client." *In re Flonase Antitrust Litigation*, 723 F.Supp.2d 761, 764 (E.D. Pa. 2010) (applying Pennsylvania law). The party asserting the privilege has the burden of showing that the doctrine applies. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. 112, 117 (E.D. Pa. 2011). However, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly. The privilege protects only those disclosures—necessary to

---

[8] Since this is a diversity action that raises a state bad faith claim, Pennsylvania law governs the applicability of the attorney-client privilege. Fed. R. Evid. 501; *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999).

obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir. 1991) (internal citations omitted).

Here, Sentry identifies numerous documents in Hydrojet's privilege log that have been withheld on the basis of attorney-client privilege. Some of those communications were withheld based on attorney-client privilege where no lawyer appeared as either the author or recipient. Hydrojet cannot withhold those documents on attorney-client privilege grounds because they could not have been necessary to procure and/or provide legal representation or advice, since the documents were not provided to an attorney nor did they originate from an attorney. *See Gillard*, 15 A.3d at 59 ("the attorney-client privilege operates in a two-way fashion to protect confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice"). Accordingly, Hydrojet must produce such documents and communications to Sentry.

Sentry also seeks certain documents and communications between Hydrojet and/or its attorney(s), Jay Levin, Esq. and Socrates Georgeadis, Esq., and third parties Horowitz, Rabinowitz, Saberton, Colston, and Fulton Bank. To resolve the question of whether these communications are privileged, I must determine whether such communications were made to obtain legal advice and/or assist with the giving of legal advice. *See Westinghouse*, 951 F.2d at 1424.

As a general rule, "[c]ommunications between attorney and client are not privileged if made in the presence of or communicated to third parties." *Barr Marine Products, Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979). Disclosures made to a third parties, however, do not constitute a waiver when the disclosure is "necessary for the client to obtain informed

legal advice" or if the disclosure is made "to an 'agent' assisting the attorney in giving legal advice to the client." *Westinghouse*, 951 F.2d at 1424. This is so because the purpose of the attorney-client privilege is to foster communication between attorneys and their clients "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. at 117.

Sentry argues that Hydrojet's privilege log fails to establish that third parties such as Horowitz and Rabinowitz "were necessary agents assisting Hydrojet's counsel in providing legal advice to Hydrojet." (doc. 35-2 at p.12). Hydrojet acknowledges the deficiencies in its privilege log and has stated that it will revise its log and produce certain documents it previously withheld. (doc.37 at pp.7-8). The parties, however, require further guidance as to the attorney-client privilege's application to third parties.

A precursor to determining whether third parties assisted counsel with legal advice, is understanding the role of counsel. For reasons stated more fully below, Jay Levin, Esq., was retained by Hydrojet for purposes of litigating this claim. *See* Section III(d) *infra*. In order to provide legal counsel regarding Hydrojet's claim, Mr. Levin required information about the BI loss and BPP claim. *See Kaminski v. First Union Corp.*, 2001 WL 793250 (E.D. Pa. 2001); *see also United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (explaining that since some lawyers require professionals to "translate" certain concepts for the furtherance of legal work or advice, the presence of those professionals does not vitiate the attorney-client privilege). That information was provided to him by third parties such as Acheson and Horowitz. As such, communications between Mr. Levin and third parties regarding the Hydrojet's claim are protected by the attorney-client privilege to the extent they were "necessary to procure and/or

provide the representation in a manner necessary to maintain the availability of coverage and/or effectuate strategy and tactics of counsel in that setting fall within the attorney-client privilege." *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 283 (W.D. Pa. 2014); *see also Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("the privilege exists to protect not only the giving of professional advice to those who act on it but also the giving of information to the lawyer to enable him to give sound and informed advice") (citations omitted).

Mr. Georgeadis' role in this matter is much less clear. The parties did not apprise the Court of Mr. Georgeadis' responsibilities as they pertained to Hydrojet's claim and therefore, because I am unable to determine whether communications with Mr. Georgeadis were necessary for the rendering of legal advice, I will order *in camera* review of documents and communications including Mr. Georgeadis which Hydrojet withheld based on attorney-client privilege.

In summation, Sentry's request to have the Court order Hydrojet to produce documents and communications with third parties that it has withheld based on attorney-client privilege, is granted as to documents and communications which do not include an attorney as a recipient or author. Hydrojet must also provide Sentry with a revised privilege log, describing the document and Hydrojet's basis for withholding. *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 482 (E.D. Pa. 2005) ("A proper claim of privilege requires a specific designation and description of the documents within its scope as well as precise and certain reasons for preserving their confidentiality"). Finally, Hydrojet shall present the aforementioned documents which include Mr. Georgeadis for *in camera* review. Sentry's request to compel the production of documents and communications with Mr. Levin is denied.

d. **Sentry's Subpoena to Jay Levin, Esq.**

Sentry also served a subpoena on Jay Levin, Esq., and his law firm Flaster Greenberg, PC., seeking documents relating to Hydrojet's claim, loss, and appraisal. *See* (doc. 35, Ex. F). The subpoena requested Mr. Levin's file or documents created before this litigation was filed. Sentry claims that Mr. Levin "was deeply involved during the insurance claim investigation and adjustment process for many months" – which it contends were nonlegal tasks. As a result, Sentry argues the attorney-client privilege does not apply to the documents it seeks since it requested documents for the period prior to the commencement of this litigation. Hydrojet claims Sentry mischaracterizes Mr. Levin's role in this matter and contends that he "acted only as counsel, addressed only legal issues, and relied on Mr. Horowitz to adjust the loss." (doc. 37 at p.25).

Mr. Levin initially objected to producing any documents in response to the subpoena and refused to produce a privilege log. After various meet and confers, Mr. Levin agreed to produce non-privileged documents responsive to the subpoena as well as a privilege log for withheld documents. (doc.37 at p.24). Since then, Hydrojet has, on behalf of Mr. Levin, produced responsive documents to Sentry, but has not provided Mr. Levin's privilege log. *Id.* Consequently, Sentry argues that if a privilege log is not produced, Mr. Levin should be ordered to produce all documents responsive to its subpoena. (doc. 35 at p.20) (*citing Parks, LLC v. Tyson Foods, Inc.*, 2015 WL 5042918, at *4 (E.D. Pa. 2015) ("If a party fails to timely produce a privilege log or other adequate description of the basis for withholding specific documents on the grounds of privilege, such failure may result in waiver of the asserted privilege.")).

While I acknowledge Sentry's argument, I recognize that discovery is in its early stages and that Hydrojet has stated it will provide a privilege log upon the completion of its rolling production. *See* (doc. 37 at p.26). Moreover, I recognize that Mr. Levin's role here was strictly to

provide Hydrojet with legal advice. Mr. Levin was retained in January 2019, after Hydrojet reasonably anticipated litigation in November 2018. *See* Section III(b) *supra*. His hiring was precipitated by Hydrojet's President's suggestion that Hydrojet "bring some big Philly legal guns onboard" to "get nastier with [Sentry] and start claiming bad faith." (doc. 38, Ex. G). Additionally, Mr. Horowitz and Mr. Levin both attested that it was Mr. Horowitz who acted as Hydrojet's adjuster, relaying pertinent information to Mr. Levin in his role as legal counsel. *See Declaration of Franklin Horowitz* (doc. 34, Ex. 3); Transcript 5/26/22 at p.43. Accordingly, I find that Mr. Levin's documents and communications are in fact protected by the attorney-client privilege to the extent such communications were "made for the purpose of obtaining or providing professional legal advice." *Gillard,* 15 A.3d at 59.

However, considering Hydrojet's failure to provide Mr. Levin's privilege log at this point in the litigation, I will order the parties to provide a Proposed Scheduling Order to the Court, which must include a date by which Mr. Levin's privilege log must be produced.[9]

## IV.   CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Sentry's Motion to Compel.

BY THE COURT:

/s/ Scott W. Reid
SCOTT W. REID, J.
UNITED STATES MAGISTRATE JUDGE

---

[9] Sentry shall reserve the right to seek to move to compel the production of documents identified in any revised privilege log which Sentry contends are not privileged.