THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| HYDROJET SERVICES, INC. | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 20-4727-SWR |
| v. | : | |
| | : | |
| SENTRY INSURANCE COMPANY, | : | |
| f/k/a SENTRY INSURANCE A | : | |
| MUTUAL COMPANY | : | |
| | : | |
| Defendant. | : | |

## **OPINION**

This case involves a single claim of bad faith arising out of a dispute regarding whether Defendant, Sentry Insurance Company f/k/a Sentry Insurance a Mutual Company ("Sentry"), mishandled and unreasonably delayed its investigation and adjustment of Plaintiff, Hydrojet Services, Inc.'s ("Hydrojet"), claim following a lightning strike outside Hydrojet's manufacturing facility in Reading, Pennsylvania in June 2018. Presently before this Court is the Hydrojet's Motion to Compel Discovery from Sentry (doc. 34) and Sentry's Response in Opposition (doc. 38).[1] Hydrojet claims Sentry improperly withheld or redacted certain documents and information Hydrojet seeks, while Sentry opposes Hydrojet's Motion on the basis that the information Hydrojet seeks is not relevant and/or is privileged. The parties appeared before me for oral argument on May 26, 2022. For the reasons that follow, Hydrojet's Motion is granted in part and denied in part.

I.  **FACTUAL BACKGROUND**

Hydrojet manufactures parts for the aerospace industry. On June 28, 2018, lightning struck a pole outside Hydrojet's manufacturing facility in Reading, Pennsylvania, causing

---

[1] Sentry concurrently filed its own Motion to Compel Discovery from Hydrojet (doc. 35) which I address in a separate Opinion.

1

damage to several pieces of Hydrojet's equipment. Hydrojet stopped all production for several hours following the strike so its staff could assess the damage. Shortly thereafter, Hydrojet submitted a claim to Sentry, its insurance carrier, under the relevant policy for Business Personal Property ("BPP") loss and Business Income ("BI") loss. Within a few weeks, Hydrojet repaired eight pieces of equipment at a cost of approximately $47,000, which Sentry paid.

In July 2018, approximately one month after the loss, Hydrojet realized its Flow 5 Axis Router[2] ("Router") was also damaged during the lightning strike. It advised Sentry about the damage to the Router and estimated damages "in the range of" $150,000. The Router remained unrepaired for several months. The reasons for the delayed repairs are central to this dispute.

In Spring 2019, Hydrojet demanded appraisal of its BI claim. On December 4, 2019, Umpire, Colleen Vallen, C.P.A., issued an appraisal award of approximately $2.4 million. Sentry paid the remaining amount due on the BI claim as determined by the Umpire (approximately $1.68 million – the difference between the advance payments it had already made and the umpire award).

On June 25, 2020, Hydrojet initiated the instant action in Pennsylvania state court, alleging that Sentry acted in bad faith by unreasonably delaying and mishandling its investigation of the claim. Sentry subsequently removed the matter to this Court. (doc. 1). During discovery, Hydrojet requested various categories of documents relating to Sentry's handling of its claim. Sentry provided certain documents to Hydrojet but also redacted and/or withheld others based on relevance and privilege. Sentry provided privilege logs identifying the documents it

---

[2] The Router is a machine used for precision cutting and shaping of parts for the aerospace industry. (doc.34 at p.1).

withheld and its basis for doing so. Hydrojet now seeks to compel the production of Sentry's redacted and withheld documents.[3]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 26 provides for the discovery of relevant, non-privileged information. *See* Fed. R. Civ. P. 26(b)(1). Under this rule, "discovery is not limited to information which is admissible at trial but instead is allowed 'if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" *Josephs v. Harris Corp.*, 677 F.2d 985, 991 (3d Cir.1982) (*quoting* Fed.R.Civ.P. 26(b)(1)). When a party resists discovery by asserting a privilege, that party bears "the burden of proving [the privilege's] existence and applicability." *In re Grand Jury Investigation*, 918 F.2d 374, 385 n.15 (3d Cir. 1990). In this regard, the party must specifically show how the asserted privilege applies. *See Josephs v. Harris Corp.*, 677 F.2d 985, 992 (1982) (The party "'must show specifically' how [the information requested] is not relevant or how [it] is overly broad, burdensome or oppressive" and a "mere statement that [the information sought] is 'overly broad, burdensome, oppressive, and irrelevant' is not adequate to voice a successful objection.").

## III. DISCUSSION

### a. Relevance

As an initial matter, I must first determine whether the documents and information sought by Hydrojet are relevant to its bad faith claim. *See* Fed. R. Civ. P. 26(b)(1). Under the Federal Rules, relevancy is to be construed broadly, and material is relevant if it bears on, or reasonably

---

[3] Hydrojet identifies six categories of documents at issue here, including: (1) documents relating to reserves; (2) claims manual and guide; (3) pre-March 20, 2019 communications; (4) communications with Craig Acheson and other third-parties; (5) communications with Reid Howell; and (6) 2010-2013 claim notes in Mr. Howell's possession.

could bear on, an issue that is or may be involved in the litigation. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350 (1978).

After reviewing the record, I find that the following items Hydrojet requests in its Motion to Compel Discovery are relevant to its bad faith claim: (1) documents relating to reserves; (2) claims manuals and guides; (3) pre-March 2019 communications; (4) communications with Craig Acheson and other third parties; and (5) communications with Reid Howell.[4] Accordingly, the remainder of this Opinion will only address items 1 through 5, above.

### b. Work Product Doctrine

Hydrojet requests certain documents identified in Sentry's privilege logs that have been withheld or redacted on the basis of the work product doctrine. Hydrojet argues that the documents it requests are not protected by the work product doctrine because the earliest Sentry could have anticipated litigation was March 20, 2019, the first date Hydrojet requested appraisal. Therefore, Hydrojet contends that Sentry must be compelled to produce all relevant documents responsive to its requests, which were created prior to March 20, 2019. Sentry, on the other hand, claims that it anticipated litigation as early as November 12, 2018 when it retained outside counsel Rawle & Henderson and Reid Howell, Esq. Thus, according to Sentry, the work product doctrine applies to relevant documents created after November 12, 2018.

The work product doctrine is governed by a uniform federal standard embodied in Federal Rule of Civil Procedure. 26(b)(3). *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Work product is defined as "tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's

---

[4] In its Motion, Hydrojet also sought the production Sentry's claim notes regarding a prior claim filed by Hydrojet from 2010 though 2013. At oral argument, counsel for Hydrojet withdrew their request so I will not address this aspect of the Motion. Transcript 5/26/22 at p.32.

4

attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3). As the party claiming the work product doctrine in this case, Sentry has the burden of establishing that it applies. *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 138 (3d Cir. 2000).

The purpose of the work product doctrine is to "protect material prepared by an attorney acting for his client in anticipation of litigation." *In re Processed Egg Prod. Antitrust Litigation*, 278 F.R.D. 112, 119 (*quoting United States v. Rockwell Int'l*, 897, F.2d 1255, 1265 (3d Cir. 1990)). The work product doctrine protects documents prepared in anticipation of litigation, rather than "in the ordinary course of business, or pursuant to public requirements unrelated to litigation." *U.S. v. Rockwell Intern*, 897 F.2d 1255, 1264 (3d Cir. 1990) (*quoting U.S. v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)).

Several courts have noted the difficulty in determining whether documents prepared by an insurance company were prepared in anticipation of litigation or in the ordinary course of business, because an insurance company "has a duty to investigate, evaluate and make a decision with respect to claims made on it by its insured." *Lyvan v. Harleysville Ins. Co.*, 1994 WL 533907, at *3 (E.D. Pa. 1994); *see also Jet Plastica Industries, Inc. v. Goodson Polymers, Inc.*, 1992 WL 10474, at * 2 (E.D. Pa. 1992) ("it is equally clear that Rule 26(b)(3) 'was not intended to protect all insurance claim files from discovery'") (*quoting Basinger v. Glacier Carriers, Inc.*, 107 F.R.D. 771, 774 (M.D. Pa. 1985)).

To determine whether an insurance company was acting in anticipation of litigation, the party asserting the doctrine must show that the "insurance company's activity shift[ed] from mere claims evaluation to a strong anticipation of litigation." *Atiyeh v. Liberty Mut. Ins. Co.*, 2000 WL 1796420, at *1 (E.D. Pa. 2000). Courts consider factors like "the nature of the documents, the nature of the litigation, the relationship between the parties and any other facts

peculiar to the case." *Brown v. Nicholson*, 2007 WL 1237931, at *2 (E.D. Pa. 2007) (*quoting Lyvan*, 1994 WL 533907, at *3 (E.D. Pa. 1994)). "In addition, courts have considered the involvement of an attorney to be 'highly relevant, although not necessarily [the] controlling factor.'" *Id.* Thus, the point at which an insurer's routine claim investigation shifts to anticipation of litigation depends on the facts of each case. *Lyvan*, 1994 WL 533907, at *4.

With these principles in mind, I find useful the opinion of the Honorable Chief Judge Juan R. Sanchez in *Borgia v. State Farm Mut. Auto. Ins. Co.*, a case involving claims of breach of contract and bad faith arising out of an insurers refusal to pay underinsured motorist benefits. 2014 WL 4375643 (E.D. Pa. 2014). There, Judge Sanchez ruled that the defendant insurer reasonably anticipated litigation when it was apparent that "[p]laintiffs' demand far exceeded State Farm's valuation of the claim." *Id.* at 3. Judge Sanchez wrote:

> [a]lthough Plaintiffs did not actually commence litigation against State Farm until April 2014, they threatened to "proceed with litigation" seven months earlier, in September 2013, if the claim was "not resolved shortly."4 Pls.' Sept. 12, 2013, letter to State Farm at 3. This threat of litigation was made in the context of a second demand for payment of full policy limits of $750,000. By the time State Farm hired counsel, two months had passed since State Farm threatened litigation and while State Farm had not yet made a settlement offer, it is apparent Plaintiffs' demand far exceeded State Farm's valuation of the claim. In these circumstances, the Court concludes State Farm reasonably anticipated litigation with Plaintiffs regarding their underinsured motorist claim no later than November 21, 2013.

*Id.*

Applying Judge Sanchez's reasoning to this case, I find that Sentry reasonably anticipated litigation regarding Plaintiff's claim by November 12, 2018, when it retained Rawle & Henderson and Reid Howell as outside counsel. Prior to obtaining legal counsel, Tami Tisor ("Tisor"), a Sentry Senior Claim Representative, primarily handled the claim. *See generally* (doc. 38, Ex. A). Tisor appears to have been intimately involved in coordinating the claims process, collecting the necessary proofs to process the claim,

6

and communicating with Hydrojet representatives. *Id.* That all changed in and around September 2018, when Tisor received notice from Hydrojet that their invoices and labor costs to repair the damaged equipment equaled approximately $199,000. *Id.* at p.9. Tisor noted that Hydrojet's costs seemed to be excessive and so she requested authority to hire a CPA, Craig Acheson, to help resolve the claim. *Id.* at pp.9-10. A week after Sentry notified Hydrojet it had retained Acheson, Frank Horowitz, a public adjuster, informed Sentry that Hydrojet had hired him to assist with its claim. *Id.* at pp.7-8. Horowitz advised Sentry that the amount of the claim would be more than Hydrojet's initial $190,000 estimate as Hydrojet experienced a large BI loss and still had to repair the Router. *Id.* at 7.

About a month later, on November 9, 2018, Horowitz sent an email to Tisor regarding the proof of loss, copying Hydrojet's outside counsel, Socrates Georgeadis, Esq.. (doc. 38, Ex. D). Horowitz's email stated that the preliminary BPP claim was valued at $617,671.57, the cost to repair the Router was approximately $520,000, and for the BI claim, Hydrojet had lost nearly $250,000 per month in lost sales. Horowitz concluded the email by stating, "It is in the best interest of Hydrojet and Sentry Insurance, to resolve the claim and Hydrojet resume servicing its customers." *Id.*

Tisor called Rawle & Henderson three days later, on November 12, 2018, "to advise what [she] needed for counsel." (doc. 38, Ex. A at p.5) That same day, Tisor alerted Horowitz that Sentry had retained counsel for this claim and advised Horowitz that he should discuss the claim with counsel going forward. *Id*. at 3. ("I advised [Horowitz] that I would prefer that he discuss this with legal counsel and advised [sic] was going to conclude our conversation.").

Given the drastic change in circumstances immediately preceding Sentry's hiring of outside counsel, I find that the point at which Sentry's routine claim investigation shifted to anticipation of litigation was November 12, 2018. *See Lyvan*, 1994 WL 533907, at *4. Sentry retained counsel when it received notice from Hydrojet that the claim would be larger and more complex than originally expected. At that point, it would be reasonable for an insurer to anticipate litigation involving the claim. *See Borgia*, 2014 WL 4375643, at *3 (finding an insurer could reasonably anticipate litigation when the insured's demand far exceeded the insurer's valuation of the claim); *cf Solano-Sanchez v. State Farm Mut. Auto Ins. Co.*, 2021 WL 2156367, at *6 (finding that an insurer did not reasonably anticipate litigation when it was not apparent that there was a large discrepancy between the insurer and the insured's valuation of the claim). Moreover, after receiving Hydrojet's proof of loss, and after retaining Rawle & Henderson, Tisor directed Horowitz to speak with counsel rather than herself – evidence of a subjective belief that she and Sentry anticipated litigation. *See Borgia*, 2014 WL 4375643, at *3 (determining when a party reasonably anticipated litigation requires a subjective analysis, which in part, must focus on the party's state of mind).

Because I conclude that Sentry reasonably anticipated litigation regarding Hydrojet's claim on November 12, 2018, materials "prepared or obtained because of the prospect of litigation" may be protected by the work product privilege. *In re Grand Jury Proceedings*, 604 F.2d at 803. I, therefore, will order *in camera* inspection of Sentry's documents created on or after November 12, 2018, which it has withheld on the basis of the work product doctrine, to determine whether they were created in anticipation of litigation.

### c. Attorney-Client Privilege

#### i. Communications with Reid Howell, Esq.

Hydrojet seeks the production of communications between Sentry and Reid Howell, Esq. Sentry has withheld such communications on the basis of attorney-client privilege. Hydrojet argues that the privilege does not apply here because although Howell is a practicing attorney, he did not act as Sentry's legal counsel during the claims process and instead worked for Sentry as a claims adjuster and handler with regard to Hydrojet's claim.

Since this is a diversity action that raises a state bad faith claim, Pennsylvania law governs the applicability of the attorney-client privilege. Fed. R. Evid. 501; *Montgomery County v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999). Under Pennsylvania law, the attorney-client privilege protects "confidential client-to-attorney or attorney-to-client communications made for the purpose of obtaining or providing professional legal advice." *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 59 (Pa. 2011).

To successfully invoke the protections of attorney-client privilege, Sentry must show: "(1) [t]he asserted holder of the privilege is or sought to become a client[;] (2) [t]he person to whom the communication was made is a member of the bar of a court, or his subordinate[;] (3) [t]he communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purposes of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort[; and] (4) [t]he privilege has been claimed and is not waived by the client." *In re Flonase Antitrust Litigation*, 723 F.Supp.2d 761, 764 (E.D. Pa. 2010) (applying Pennsylvania law). The party asserting the privilege has the burden of showing that the doctrine applies. *Conoco Inc. v. U.S. Dep't of Justice*, 687 F.2d 724, 730 (3d Cir. 1982).

The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. at 117. However, "[b]ecause the attorney-client privilege obstructs the truth-finding process, it is construed narrowly. The privilege protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1423–24 (3d Cir. 1991) (internal citations omitted).

It is undisputed that Pennsylvania courts have consistently held that communications between an insurer and its outside counsel during the claim investigation process are protected by attorney-client privilege. *See Dansko Holdings, Inc. v. Benefit Trust Company*, 2017 WL 5593321, *4-5 (E.D. Pa. 2017) (discussing cases). The question before me now, however, is whether Howell acted as legal counsel for Sentry during the claims investigation process. Howell states, via sworn declaration, that he "acted solely as outside counsel to Sentry," "never at any time acted as a claims adjuster with respect to the Claim," and "never had decision-making authority relating to the Claim." (doc. 38, Ex. E, ¶¶ 7, 12). He further states that in his capacity as outside counsel for Sentry, he "provided Sentry with legal and strategic advice" "assisted Sentry in retaining experts" "negotiated a settlement of Hydrojet's [BPP] claim" "assisted Sentry in litigating" "facilitated communications between Sentry and Hydrojet's outside counsel" and "attended several in-person meetings and site visits at Hydrojet's facility." *Id.* at ¶ 9.

Howell's sworn statements are further substantiated by notes in the record. For example, within the first month that Sentry retained Howell, he drafted a reservation of rights letter for Sentry and coordinated confidentiality agreements with Hydrojet – functions of a lawyer. (doc.38-2, Ex. A at 92, 103-04). Moreover, as discussed *supra* in Section III (b), Sentry retained

10

Howell only when it anticipated litigation on or around November 12, 2018. Such evidence confirms Howell served in a legal capacity for Sentry.

As a result, I find that Sentry has properly withheld its communications with Reid Howell on the basis of attorney-client privilege.

### ii. Communications with Third Parties

Hydrojet also seeks to compel the production of numerous documents and communications between Sentry, Howell, and third parties Craig Acheson, Envista, and/or NFC.[5] Sentry has withheld these documents based on the attorney-client privilege which it argues protects communications between third parties and Howell because the privilege extends to communications intended to facilitate the provision of legal advice. Hydrojet argues that the inclusion of third-parties in these communications waives the privilege.

As a general rule, "[c]ommunications between attorney and client are not privileged if made in the presence of or communicated to third parties." *Barr Marine Products, Co. v. Borg-Warner Corp.*, 84 F.R.D. 631, 634 (E.D. Pa. 1979). Further, "[d]isclosing a communication to a third party unquestionably waives the privilege." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 361 (3d Cir. 2007). There are, however, numerous exceptions and nuances to this rule.

Disclosures made to a third-party consultant do not constitute a waiver when the disclosure is "necessary for the client to obtain informed legal advice" or if the disclosure is made "to an 'agent' assisting the attorney in giving legal advice to the client." *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1424 (3d Cir. 1991). Pennsylvania law recognizes that "[t]he protection of the attorney-client privilege involving communications

---

[5] As previously discussed, Craig Acheson is an accountant who was retained by Sentry to assist with adjusting the claim. (doc.38 at p.18). Envista is an engineering firm retained by Sentry to investigate Hydrojet's damages and evaluate potential repairs. *Id.* NFC is a forensic investigation firm retained by Sentry, through Howell, to investigate equipment damage. *Id.*

11

regarding the availability of insurance can extend to those agents who are necessary to effectuating the representation [which] can include communications between an insured and an insurance carrier and their respective agents where the disclosures to the agents are in furtherance of the purpose of the privilege." *Serrano v. Chesapeake Appalachia, LLC*, 298 F.R.D. 271, 282 (W.D. Pa. 2014) (*citing Levy v. Senate*, 34 A.3d 243, 254–55 (Pa. Commw. Ct. 2011)). The purpose of the attorney-client privilege is to foster communication between attorneys and their clients "to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. at 117.

In this context, Howell's ability to give sound and informed legal advice depended on the assessment of the claim and other information conveyed by Sentry's agents such as Acheson, Envista, and NFC. In order to draft reservation of rights letters, discuss coverage issues, provide legal advice regarding the claim, and negotiate settlement, Howell required accounting and financial information provided to him by Acheson, as well as technical information regarding the extent of damages and potential repairs to the Router, which came with the assistance of Envista and NFC. *See Kaminski v. First Union Corp.*, 2001 WL 793250 (E.D. Pa. 2001); *see also United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961) (explaining that since some lawyers require professionals to "translate" certain concepts for the furtherance of legal work or advice, the presence of those professionals does not vitiate the attorney-client privilege). Thus, Howell's communications with third parties on behalf of Sentry are protected by the attorney-client privilege to the extent they were "necessary to procure and/or provide the representation in a manner necessary to maintain the availability of coverage and/or effectuate strategy and tactics of counsel in that setting fall within the attorney-client privilege." *Serrano*, 298 F.R.D. at 283;

*see also Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("the privilege exists to protect not only the giving of professional advice to those who act on it but also the giving of information to the lawyer to enable him to give sound and informed advice") (citations omitted).

Accordingly, Hydrojet's request to have the Court order Sentry to produce documents and communications with Howell and third parties, which it has withheld on the basis of attorney-client privilege, is denied.

    **d. Reserve Information**

Hydrojet requests that Sentry produce all documents relating to reserves withheld from its productions. Sentry claims the reserve information is not relevant and also constitutes work product.

An insurance reserve is money set aside "to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Insurance. Co. of N. America*, 852 A.2d 1230, 1232 n. 3 (Pa. Super. Ct. 2004). Pennsylvania requires insurance companies to set reserves aside when they are placed on notice of possible losses arising under their policies. *See Keefer v. Erie Ins. Exchange*, 2014 WL 201123, at *3 (M.D. Pa. March 7, 2014) (*quoting Fidelity & Deposit Co. of Md. V. McCulloch*, 168 F.R.D. 516, 525 (E.D. Pa. 1996)).

Courts in this Circuit have held that reserves may be discoverable in a bad faith action when the claim relates to the insurer's failure to settle or where there is a discrepancy regarding the value of the claim. *See e.g., Borgia v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4375643, at *4 n.5 (E.D. Pa. Sept. 3, 2014) (finding the reserves were relevant to the plaintiff's UIM claim because "the establishment of reserves would serve little, if any, purpose unless the reserves 'have some relationship to the insurer's estimation of the insured's potential liability' ") (citations omitted); *Consugar v. Nationwide Ins. Co. of America*, 2011 WL 2360208, at *5 (M.D. Pa. 2011) ("the amount set aside for reserves 'is certainly germane to any analysis [defendant]

13

made of' the claim's value, and of whether defendant acted in bad faith in processing the claim") (citations omitted); *Oak Lane Printing & Letter Serv., Inc. v. Atlantic Mut. Ins. Co.,* 2007 WL 1725201, at * (E.D. Pa. June 13, 2007) (stating that reserves "must be relevant to a specific issue presented in a bad faith action," such as when "the insurer fails to settle or where there is a disputed issue regarding the value of the claim").

However, when the bad faith claim is based on a denial of coverage and "does not involve the value of the claim or [the plaintiff's] estimation of liability ... the reserve information requested is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Executive Risk Indem., Inc. v. Cigna Corp.*, 2006 WL 2439733, at *5 & n.7 (C.C.P. Phila. Cnty. 2006) (citing *McCulloch*, 168 F.R.D. 516 (E.D. Pa. 1996) and *Safeguard Lighting Systems, Inc. v. N. American Specialty Ins. Co.*, 2004 WL 3037947 (E.D. Pa. 2004) ); *see also Mine Safety Appliances Co. v. N. River Ins. Co.*, 2012 WL 12930306, at *3 (W.D. 2012) (discussing *Executive Risk* and holding that reserves were not discoverable in a case where coverage under the policy was at issue).

The issue in this case is not whether coverage exists. Rather, the core issue is Sentry's alleged delay in investigating and adjusting Hydrojet's first party coverage claim under the insurance policy. The parties disputed the value of the claim throughout the investigation process and ultimately required an umpire to reach a conclusion. While Sentry argues this is not a case about value because they promptly paid the umpire's award, its valuation of the claim during the claims process could provide evidence of what resources Sentry was willing to expend for the claim as well as any priority Sentry may have given the claim based on its perceived value. *See Keefer v. Erie Ins. Exchange*, 2014 WL 901123 at *3 (M.D. Pa. 2014) ("[A] comparison between the reserve value of the claim and Defendant's actions in processing Plaintiff's claim could shed

14

light on Defendant's liability under the bad faith statute. The reserve amount is, therefore, relevant or could potentially lead to relevant information, and the court will order disclosure of such information.").

Accordingly, I find that the reserve information that Hydrojet seeks is discoverable and should be produced by Sentry in a manner consistent with this Opinion.[6]

### e. Claims Manual and Guide

Hydrojet moves to compel Sentry to produce the entirety of its Claims Performance Guide and Claims Performance Manual in response to Nos. 7-10 of its First Request for Production of Documents. These requests seek information related to "how Sentry sets reserves" "how Sentry calculates the value of [BI] losses" "how Sentry adjusters are supposed to decide when to retain independent adjusters and other consultants" and how Sentry employees are trained. Sentry objected to all four requests and provided Hydrojet with redacted copies of both its Claims Performance Guide and Claims Procedure Manual. Sentry contends that the redacted portions of its productions are irrelevant to Hydrojet's claim. Moreover, it argues that Hydrojet has no basis for seeking to compel the entirety of its guides and manuals because Hydrojet did not request guides and manuals on all topics.

Courts in this Circuit have consistently found a claims manual or claims-handling procedure relevant to a bad faith claim. *Platt v. Fireman's Fund Ins. Co*., 2011 WL 5598359, at *2 (E.D.Pa. 2011) (discussing cases). These documents are relevant in the bad faith context because they allow a plaintiff to compare a defendant's standards for evaluating a claim with the defendant's actual conduct. *Consugar*, 2011 WL 2360208, at *6 ("A failure to follow established

---

[6] To the extent that any reserve information Hydrojet seeks was created after November 12, 2018, and in preparation of this litigation, such information must be produced to the Court for *in camera* review.

policy could make it more likely that defendant acted in bad faith"); *see also Safeguard Lighting Sys., Inc. v. N. Am. Specialty Ins. Co.*, 2004 WL 3037947, at *3 (E.D.Pa. 2004) ("[A]ny material which pertains to instructions and procedures for adjusting claims and which was given to the adjusters who worked on plaintiffs' claims may be relevant to the action and must be produced."); *Robertson v. Allstate Ins. Co.*, 1999 WL 179754, at *6 (E.D.Pa. 1999) ("Given the liberal scope of federal discovery and the fact that such information may lead to the discovery of admissible evidence, [the defendant] is ordered to produce claims or procedure manuals setting forth company practices or policies" for handling claims).

Accordingly, I will grant Hydrojet's motion as to this part and order Sentry to produce responsive sections of its Claims Performance Guide and Claims Procedure Manual which do not redact information related to Requests Nos. 7-10 of Hydrojet's First Request for Production of Documents. To the extent that Hydrojet now seeks information that it did not previously request, those requests are denied.

    **f. Boilerplate Objections**

Finally, Hydrojet argues that Sentry improperly objected to its First Request for Production of Documents by raising nonspecific, boilerplate objections in violation of Fed. R. Civ. Pro. 34. Hydrojet argues that Sentry's violation of the rules should result in waiver of all its objections, and that Sentry should be ordered to produce any responsive documents subject to the requests to which the boilerplate objections were raised. Sentry disputes that its objections are boilerplate, but nevertheless states that it did not withhold documents based on those objections, and that any withheld documents and the basis for those withholdings are identified in its privilege log. As a result, Sentry claims this issue is moot.

Federal Rule of Civil Procedure 34 allows the parties to "serve on any other party a request within the scope of Rule 26(b) to produce ... any designated documents." Fed. R. Civ. P.

16

34(a)(1)(A). In responding to a request for document production, "Rule 34 requires that a party served with a document request either produce the requested documents or state a specific objection for each item or category objected to." *Harcum v. Leblanc*, 268 F.R.D. 207, 209 (E.D. Pa. 2010). "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). Rather, the responding party must "state with specificity the grounds for objecting to the request" and "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34 (b)(2)(B)–(C).

Sentry indicated it did not withhold any documents based on "boilerplate" objections and any withheld documents were based on its privilege log. As Sentry did not withhold any documents based on these objections, this part of Hydrojet's motion is considered moot and denied. *See Corrigan v. Methodist Hosp.*, 158 F.R.D. 54, 57 (E.D. Pa. 1994) (denying plaintiff's motion to compel as moot where defendant stated he had no responsive documents in response to plaintiff's requests for production). Sentry's privilege claims, however, are subject to the analysis above.

## IV. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Hydrojet's Motion to Compel.

BY THE COURT:

 /s/ Scott W. Reid
SCOTT W. REID, J.
UNITED STATES MAGISTRATE JUDGE